# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

MELANIE W.,

                                        Plaintiff,

            v.                                              5:19-CV-724
                                                            (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

---

HOWARD D. OLINSKY, ESQ., for Plaintiff
MICHAEL L. HENRY, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. Nos. 4, 7).

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on March 2, 2017,  and an application for Supplemental Security Income ("SSI") on March 16, 2017, each alleging disability beginning May 1, 2013.  (Administrative Transcript ("T") 170-90, 204).  Plaintiff's applications were denied initially on May 16, 2017.  (T. 110-11).  Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Jude B. Mulvey on January 22, 2019. (T. 40-76).  At the hearing, plaintiff amended her onset date to November 22, 2016.  (T. 46).  The ALJ then heard testimony

from plaintiff, as well as vocational expert ("VE") Esperanza Distefano.  (T. 46-75).
On February 5, 2019, the ALJ issued an order denying plaintiff's claims.  (T. 19-39).
The ALJ's decision became the Commissioner's final decision when the Appeals
Council denied plaintiff's request for review on April 25, 2019.  (T. 1-4).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI
disability benefits must establish that he is "unable to engage in any substantial gainful
activity by reason of any medically determinable physical or mental impairment which
can be expected to result in death or which has lasted or can be expected to last for a
continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In
addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity
> that he is not only unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national economy, regardless
> of whether such work exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or whether he would be
> hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections
404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work
> activities.  If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has an impairment

which meets or equals the criteria of an impairment listed in Appendix 1 of
the regulations.  If the claimant has such an impairment, the
[Commissioner] will consider him disabled without considering vocational
factors such as age, education, and work experience . . . . Assuming the
claimant does not have a listed impairment, the fourth inquiry is whether,
despite the claimant's severe impairment, he has the residual functional
capacity to perform his past work.  Finally, if the claimant is unable to
perform his past work, the [Commissioner] then determines whether there
is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520,

416.920.  The plaintiff has the burden of establishing disability at the first four steps.

However, if the plaintiff establishes that her impairment prevents her from performing

her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine

whether the correct legal standards were applied and whether substantial evidence

supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v.*

*Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012).  It must be "more than a scintilla" of evidence scattered throughout the

administrative record.  *Id.*  However, this standard is a very deferential standard of

review " – even more so than the 'clearly erroneous standard.'"  *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from

both sides, because an analysis of the substantiality of the evidence must also include

that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision.  *Id*.  *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony).  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   FACTS

Plaintiff was fifty-one years old on the date of the administrative hearing.  (T. 46).  She lived in a mobile home with her mother and two adult children.  (T. 47).  Plaintiff completed school through the ninth grade, and obtained a GED.  (*Id.*).  She had a driver's license, but did not drive long distances because it aggravated her back pain.  (T. 48, 58-59).  Prior to applying for disability, plaintiff worked as a cleaner, cashier, and child care provider.  (T. 49-50).

Plaintiff testified that she could not work, primarily due to her back pain and the side effects of her medication.  (T. 51).  Plaintiff experienced pain in her back, shoulders, and legs.  (T. 51-52).  The medication she took for her symptoms caused her disorientation, fatigue, and memory deficits.  (*Id.*).  She slept three to four hours per

4

night, and approximately four to five hours during the day.  (T. 52).  Her children took responsibility for household duties, including cooking and cleaning.  (*Id.*).  She did not like to leave the house, because the air aggravated her lungs.  (T. 55-56).  When plaintiff did go shopping, she brought one of her children with her.  (T. 53).  Plaintiff usually watched television during the day, and often fell asleep while doing so.  (T. 52-53).

Plaintiff's pain limited her from sitting in a chair for more than ten to fifteen minutes at a time.  (T. 54).  She could stand for approximately five minutes.  (T. 54).  Although she could lift an object weighing up to eight pounds, plaintiff could not carry it far.  (*Id.*).  Plaintiff also testified about her limitations in climbing stairs and reaching.  (T. 54-55).  When asked about her neck, plaintiff stated that she could turn her head and look down.  (T. 56).  Plaintiff used a cane, however it was not prescribed to her by a physician.  (T. 58).

## IV.   **THE ALJ'S DECISION**

After reviewing the procedural history of the plaintiff's application and stating the applicable law, the ALJ found that plaintiff had not engaged in substantial gainful activity ("SGA") since her disability onset date.  (T. 24).  At step two of the sequential evaluation, the ALJ found that plaintiff had the following severe impairments: adhesive capsulitis of the right shoulder, chronic obstructive pulmonary disease, degenerative disk disease, diabetes, a gastrointestinal impairment, and a mental impairment.  (T. 25).  At step three of the evaluation, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listed Impairment.  (T. 25-26).

At step four, the ALJ found that plaintiff had the RFC for light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she was limited to simple, routine and repetitive work, and should avoid concentrated exposure to irritants such as fumes, odors, dust, gases or poorly ventilated areas. (T. 27). She could only occasionally kneel, crouch, stoop, crawl, handle and finger; never climb ladders, ropes, or scaffolds; and frequently reach. (*Id.*).

Next, the ALJ found that plaintiff was unable to perform any past relevant work. (T. 32). However, at step five, using the Medical Vocational Guidelines as a "framework," and the VE's testimony, the ALJ found that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (T. 33). Thus, the ALJ found that plaintiff was not disabled. (*Id.*).

## V.   ISSUES IN CONTENTION

Plaintiff raises two arguments:

1.   The ALJ failed to properly analyze the opinion of Dr. Perla under the treating physician rule. (Plaintiff's Brief ("Pl.'s Br.") at 9-13) (Dkt. No. 9).

2.   The ALJ failed to properly account for plaintiff's cervical spine limitations as opined by consultative examiner Dr. Lorensen. (Pl.'s Br. at 13-15).

The Commissioner contends that the ALJ's opinion analysis, and ultimate RFC determination, are supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 4-8) (Dkt. No. 10). For the following reasons, this court agrees with the defendant and will affirm the Commissioner's decision.

**DISCUSSION**

**VI.**   **RFC/WEIGHT OF THE EVIDENCE/TREATING PHYSICIAN**

    **A.**   **Legal Standards**

        **1.**   **RFC**

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements

7

regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2.     Weight of the Evidence/Treating Physician

In making a determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL 374183, at *2-3 (1996). Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical issues," but are "administrative findings." The responsibility for determining these issues belongs to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at *2. These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether the plaintiff is "disabled" under the Act. *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d). The ALJ must clearly state the legal rules that he applies and the weight that he accords the evidence considered. *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2

(S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  If an ALJ decides not to give the treating source's records controlling weight, then he must explicitly consider the four *Burgess* factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting *Burgess v. Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)).  "[T]he ALJ must 'give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion.' " *Id.* at 96 (citing *Halloran v. Barnhart*, 362 F.3d at 32).  Should an ALJ assign less than controlling weight to a treating physician's opinion and fail to consider the above-mentioned factors, this is a procedural error.  *Id.*  It is impossible to conclude that the error is harmless unless a "searching review of the record . . . assures us that the substance of the treating physician rule was not traversed." *Id.*

### B.     Application

### 1.     Dr. Perla's Medical Opinion

Plaintiff first contends that the ALJ failed to properly weigh the opinion of
plaintiff's cardiologist, Charles Perla, M.D.  (Pl.'s Br. at 9-13).  Specifically, plaintiff
argues that the ALJ neglected to apply the treating physician rule in his evaluation of
Dr. Perla's opinion, including the ALJ's obligation to provide "good reason" for
affording it less-than-controlling weight.  (*Id.*).  The Commissioner contends that the
ALJ's evaluation of Dr. Perla's medical opinion is supported by substantial evidence.
(Def.'s Br. at 4-8).

On February 20, 2018, plaintiff re-commenced treatment at Cardiovascular
Group of Syracuse ("CGS") with Dr. Perla.  (T. 835).[1]  Plaintiff presented to Dr. Perla
with complaints of anginal symptoms occurring with exertion, "[i.e.] lifting, walking,
and being in the cold weather."  (*Id.*).  Upon examination, plaintiff appeared healthy
and well developed; she exhibited no signs of acute distress.  (T. 838).  Plaintiff walked
with a normal gait and displayed good muscle tone and strength.  (*Id.*).  Her neurologic
examination was unremarkable.  (*Id.*).  Dr. Perla's progress note also references
plaintiff's normal electrocardiogram test results from 2017 and 2018.  (*Id.*).

Based on his cardiovascular evaluation of plaintiff, Dr. Perla ordered a coronary
angiogram and recommended a potential cardiac revascularization.  (T. 839-40).  The
procedure was performed on March 5, 2018 at St. Joseph's Hospital, by Matthew

---

[1]According to Dr. Perla's contemporaneous progress note, plaintiff was last seen at CGS in
2015, after which she began treating with a different cardiology practice.  (T. 835).

O'Hern, M.D. (T. 769-785). According to Dr. O'Hern, plaintiff was noncompliant with various post-operative directives at the hospital, immediately after the procedure. (T. 777).

Plaintiff returned to visit Dr. Perla for a follow-up evaluation on April 9, 2018. (T. 842). At that time, plaintiff denied chest pain, dyspnea, palpitations or syncope. (*Id.*). Dr. Perla noted that plaintiff "still continues to smoke." (*Id.*). He also referenced plaintiff's "suboptimally controlled diabetes." (*Id.*). Upon physical examination, plaintiff appeared healthy, well developed, and in no acute distress. (T. 845). She walked with a normal gait, and exhibited good muscle strength and tone. (*Id.*). Her neurologic exam revealed "motor and sensory grossly intact and bilaterally equal." (*Id.*). Based on the results of his examination, Dr. Perla recommended that plaintiff continue with her current treatment regimen and return in four months for a follow-up visit. (T. 846).

Plaintiff returned to CGS on August 24, 2018, at which time she was seen by nurse practitioner ("NP") Michelle Depalmo. At that time, plaintiff denied chest pain, shortness of breath, palpitations, edema, and/or dizziness. (T. 847). She admitted that she continued to smoke cigarettes, and stated that she was unable to stop due to various stress factors in her life. (*Id.*). Plaintiff further reported that she had been experiencing right upper abdominal pain for the past six months, for which she was treating with a gastroenterologist. (*Id.*). Upon examination, plaintiff appeared healthy and well developed, but in obvious discomfort. (T. 850). Cardiovascular and musculoskeletal examinations revealed normal findings. (*Id.*). Plaintiff was observed to walk with a

steady gait, and exhibited normal mood and affect.  (*Id.*).  NP Depalmo reported softness and moderate tenderness in plaintiff's right upper abdomen.  (*Id.*).  Plaintiff was instructed to return in four months to follow up with Dr. Perla.  (T. 851).  NP Depalmo also encouraged plaintiff to continue treatment for her abdominal pain.  (*Id.*).

On January 8, 2019, Dr. Perla prepared a Medical Source Statement ("MSS") on behalf of plaintiff.  (T. 925-28).  Among other things, Dr. Perla noted that gastrointestinal upset was a possible side effect of the Plavix he prescribed her.  (T. 925).  In rendering his opinion regarding plaintiff's functional limitations, Dr. Perla also noted that "patient sees an orthopedist for disc disease[.]"  (T.  926).  Nevertheless, Dr. Perla opined that plaintiff was limited to sitting for 20 minutes at a time, and for no more than four hours in an eight-hour workday.  (*Id.*).  He further opined that plaintiff was limited to standing for 15 minutes at a time, for less than two hours in an eight-hour work day.  (*Id.*).  Plaintiff could rarely twist, stoop/bend, crouch/squat, or climb stairs, and she could never climb ladders.  (*Id.*).  With respect to lifting and carrying, Dr. Perla opined that plaintiff could occasionally lift or carry up to ten pounds, could rarely lift or carry twenty pounds, and could never lift or carry fifty pounds.  (*Id.*).

With respect to her cervical spine, Dr. Perla opined that plaintiff could frequently[2] perform the referenced postural activities, including looking down, turning her head right or left, looking up, and holding her head in a static position.  (T. 927).

---

[2]According to the MSS, " 'frequently' means 34% to 66% of an 8-hour workday."  (T. 926).  However, the court notes that the MSS limits the writer's options to "never," "rarely," "occasionally," and "frequently."  (*Id.*).  In other words, there is no opportunity for the writer to mark that an individual is "unlimited" in the referenced function.

He further opined that plaintiff could occasionally grasp and turn objects with her hands, perform fine manipulations with her fingers, and reach in all directions with her arms. (*Id.*). According to Dr. Perla, plaintiff's impairments would cause her to be off task more than 20% of the time during an eight-hour workday, and absent from work more than four days per month. (*Id.*).

The ALJ specifically discussed Dr. Perla's opinion in his disability decision, giving it "partial weight." (T. 31). In his evaluation, the ALJ acknowledged that Dr. Perla is an acceptable medical source with specialized experience in cardiology. (T. 31). However, the ALJ also stated that Dr. Perla did not treat plaintiff for her non-cardiac impairments, nor did he provide specific clinical findings to support his conclusions. (*Id.*). The ALJ then cited to various inconsistencies between Dr. Perla's restrictive functional limitations and his reported findings upon physical examination. (*Id.*). The ALJ also noted inconsistencies between Dr. Perla's opinion and other medical evidence of record, as well as plaintiff's activities of daily living. (*Id.*). Last, the ALJ discredited Dr. Perla's conclusion regarding the frequency of plaintiff's time off-task and absenteeism. (*Id.*).

At the outset, Dr. Perla was not a treating physician whose opinion was entitled to controlling weight. According to the regulations, a treating physician is "your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An ongoing treatment relationship exists "when the medical evidence establishes that you see, or have seen, the source

13

with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)." *Id.* The Second Circuit has further clarified that an ALJ gives a treating physician controlling weight because of the "continuity of treatment he provides and the doctor/patient relationship he develops[.]" *Weathers v. Colvin,* No. 3:15-CV-575 (FJS), 2017 WL 177649, at *5 (N.D.N.Y. Jan. 17, 2017) (citing *Mongeur v. Heckler,* 722 F.2d at 1039 n.2). Thus, "courts have consistently held that a physician who examines a patient 1–3 times during a limited period does not typically have the kind of relationship that qualifies as a treating physician relationship for the purposes of the social security regulations." *Pritchett v. Berryhill*, No. 17-CV-719, 2018 WL 3045096, at *5 (W.D.N.Y. June 20, 2018) (listing cases).

The record reflects that Dr. Perla only examined plaintiff on two occasions during the alleged disability period – once for an initial examination, and again for a follow-up evaluation after a procedure performed by a different cardiologist. Although there is evidence that Dr. Perla may have had a past treating relationship with plaintiff, the administrative record does not include any progress notes by Dr. Perla that predate 2018. In any event, it is clear that plaintiff's prior treating relationship with Dr. Perla existed well before the disability onset date. Thus, despite the ALJ's passing reference to Dr. Perla as plaintiff's treating cardiologist, the treating physician rule was not implicated because Dr. Perla did not meet the requirements to be a treating physician. *See id.* at *6 ("Courts may conclude that a physician is not a treating source despite the fact that the ALJ "casually mentions" that he is a treating source.").

14

Despite the inapplicability of the treating physician rule, Dr. Perla is still an acceptable medical source and it was incumbent upon the ALJ to consider his opinion and determine what weight to assign it, using the applicable regulatory factors.  *See* C.F.R. §§ 404.1527(c), 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.").  Here, the ALJ provided sufficient analysis and reasoning for the partial weight attributed to Dr. Perla's opinion. In addition to considering Dr. Perla's specialization and treatment relationship with the plaintiff, the ALJ properly determined that Dr. Perla's restrictive exertional limitations were inconsistent with and unsupported by his own unremarkable findings upon physical examination.  (T. 31).  On the two occasions he examined plaintiff, Dr. Perla found that she walked with a normal gait, exhibited good muscle tone and strength, had unremarkable neurological findings, and otherwise exhibited no symptoms of acute distress.  (T. 838, 845).  Dr. Perla did not specifically examine plaintiff's functional capacity to sit, stand, or walk, however his progress notes lack objective evidence that would support the restrictive exertional limitations contained in his medical opinion. The inconsistencies between Dr. Perla's treatment notes and his medical opinion were properly considered by the ALJ.  *See Woodmancy v. Colvin,* 577 F. App'x 72, 75 (2d Cir 2014) ("[T]he ALJ acted within her discretion in according the [medical] opinions little weight because record evidence of unremarkable clinical findings contradicted or failed to support the limitations conclusions in these opinions.").

Moreover, the ALJ properly considered the consistency, or lack thereof, between Dr. Perla's opinion and other substantial evidence in the record. The ALJ provided an extensive review of the medical evidence, thoroughly evaluating plaintiff's treatment history during the alleged period of disability. (T. 28-31). In doing so, the ALJ referenced imaging results showing mild degenerative disc disease of the cervical and lumbar spine, mild degenerative changes to the hips and left knee, and moderate, at most, degenerative changes to the right acromioclavicular joint. (T. 28). The ALJ acknowledged that some of plaintiff's physical examinations were positive for joint tenderness and reduced range of motion of the spine, shoulder, and knees. (T. 28). However, the ALJ determined that the totality of the evidence revealed plaintiff did not exhibit any "ongoing fatigue, distress, gait abnormalities, reduced range of motion of her joints, tenderness in her joints, [or] strength or sensation deficits. (*Id.*). Plaintiff's primary care provider often noted her "good" posture and ability to "stand[ ] comfortably erect and sit[ ] comfortably. (T. 610, 614, 619, 628, 634, 639, 959, 967, 974). Plaintiff testified that her use of a cane was a personal choice, and not prescribed by any health provider. The lack of its medical necessity was confirmed by consultative examiner Dr. Lorensen, who observed that plaintiff's gait was even and steady, even without the cane. (T. 530).

It was, furthermore, within the ALJ's discretion to reject Dr. Perla's estimates of absenteeism and time off-task. The ALJ not only pointed out the lack of evidence supporting such extreme limitations, but also cited to plaintiff's "consistent lack of attention, concentration, or memory deficits during most examinations," as well as her

ability to attend to regularly scheduled activities of daily living. (T. 31). *See O'Connor v. Comm'r of Soc. Sec.*, No. 5:11-CV-1425 (TJM), 2013 WL 1180963, at *5 (N.D.N.Y. Mar. 20, 2013) (ALJ properly rejected physician's opinion regarding plaintiff's absenteeism rate of four days a month, despite some evidence to the contrary, where "objective medical evidence in the record provid[ed] substantial evidence to support the ALJ's finding that [the opinion] is speculative."); *Palmer v. Berryhill*, No. 17-CV-6260, 2018 WL 3537074, at *5 (W.D.N.Y. July 23, 2018) (ALJ was entitled to discount nurse practitioner and physician's opinion that plaintiff would be off task more than 20% of an eight-hour workday and absent from work more than four days per month as speculative, and not based on any documented observation or evaluation, "because the SSA's regulations authorize [the ALJ] to discount an opinion that lacks support, particularly medical signs and laboratory findings, and is not well explained.").

For the reasons stated, the ALJ properly evaluated Dr. Perla's medical opinion and remand is not warranted on this basis.

### 2.    Plaintiff's Cervical Spine Limitations

Plaintiff next argues that the ALJ failed to properly incorporate the cervical spine limitations opined by consultative examiner Elke Lorensen, M.D. into the modified RFC for light work.  (Pl.'s Br. at 13-14).  The Commissioner argues that the ALJ's RFC properly accounts for plaintiff's neck limitations.  (Def.'s Br. at 8).

On April 27, 2017, Elke Lorensen, M.D. performed a consultative examination of plaintiff.  (T. 528-32).  Upon physical examination, Dr. Lorensen noted that plaintiff appeared in no acute distress, and walked with a gait that was slow but even, steady,

and normal.  (T. 530).  Plaintiff's stance was normal, but she tended to hold on to the table when performing lumbar spine ranges of motion.  (*Id.*).  She needed no help changing for the exam or getting on and off the exam table.  (*Id.*).Plaintiff exhibited full range of motion in her elbows, forearms, wrists and ankles.  (T. 531).  Dr. Lorensen observed less-than-full range of motion in plaintiff's cervical spine, lumbar spine, shoulders, hips and knees.  (*Id.*).  Dr. Lorensen further identified four positive trigger points for fibromyalgia.  (T. 531).  Plaintiff exhibited normal neurologic findings, with full strength in the upper and lower extremities.  (*Id.*).  She also exhibited intact hand and finger dexterity, and full grip strength in both hands.  (*Id.*).

Based on her physical examination and review of plaintiff's shoulder and knee imaging, Dr. Lorensen opined that plaintiff had "no gross limitation for sitting, standing, walking, and handling small objects with the hands."  (T. 532).  She further opined that plaintiff had moderate limitations for bending, lifting, reaching, and turning the head."  (*Id.*).  Last, she determined that plaintiff should avoid heights, operating machinery, smoke, dust, and other respiratory irritants.  (*Id.*).

The ALJ explicitly considered Dr. Lorensen's medical opinion in his disability decision, giving it "partial weight."  (T. 31).  In evaluating Dr. Lorensen's opinion, the ALJ recognized her as an acceptable medical source who examined the plaintiff on one occasion.  (*Id.*).  The ALJ then went into a detailed assessment of the opinions by Dr. Lorensen that he found were supported by substantial evidence in the record.  For example, Dr. Lorensen's conclusion that plaintiff had no limitations in standing, walking, and sitting was consistent with plaintiff's lack of difficulty with such exertions

during the majority of her physical examinations, as well as her reported ability to exercise and shop.  (*Id.*).  The ALJ also found Dr. Lorensen's opined moderate limitations in lifting and bending to be consistent with plaintiff's history of degenerative disc disease, and testimony regarding her chronic pain.  (*Id.*).  Last, the ALJ found Dr. Lorensen's limitation regarding respiratory irritants to be consistent with plaintiff's history of chronic obstructive pulmonary disease. (*Id.*).

The ALJ also discussed the opinions by Dr. Lorensen that he determined lacked support in the overall record.  Specifically, the ALJ determined that Dr. Lorensen's opinion plaintiff was moderately limited in reaching to be inconsistent with her lack of range of motion deficits involving her upper extremities during most examinations, as well as her most recent shoulder x-ray, which was normal.  (*Id.*).  The ALJ also found Dr. Lorensen's opinion that plaintiff was moderately limited in turning her head to be inconsistent with plaintiff's testimony, and Dr. Perla's opinion.  (T.  31).

Plaintiff contends that the ALJ erred in failing to incorporate Dr. Lorensen's cervical spine limitations into plaintiff's RFC, leaving "such opined limitations in her neck . . . unaccounted for entirely."  (Pl.'s Br. at 14)  Plaintiff further argues that it was improper for the ALJ to assign "partial" weight to the two medical opinions of record, and use them to discredit each other relative to plaintiff's cervical spine limitations. (*Id.*).  Last, plaintiff argues that the ALJ erred in failing to incorporate plaintiff's cervical spine limitations in his hypothetical to the VE.

To plaintiff's point, some courts have acknowledged circumstances where the "limited" or "partial" weight afforded to every medical opinion of record by an ALJ

results in legal error subject to remand.  *See Deubell v. Comm'r of Soc. Sec.*, No. 18-CV-935, 2019 WL 5781860, at *4 (W.D.N.Y. Nov. 6, 2019) (ALJ gave vague "partial" and "little" weight to every opinion, including the only functional physical opinion of record, rendering it unclear upon what evidence the ALJ based her specific RFC); *King v. Saul,* No. 18-CV-7274, 2020 WL 1536337, at *4 (E.D.N.Y. Mar. 31, 2020) (ALJ arbitrarily substituted her own judgment for competent medical opinion in giving "partial" or "no" weight to every medical opinion of record, but did not find that any conflicting opinion deserved controlling weight).

However, "[t]here is a difference between [an ALJ] making independent findings and sorting through other sources' findings in a way that is consistent with the overall record." *Deubell v. Comm'r of Soc. Sec*., 2019 WL 5781860, at *4.  "In formulating a plaintiff's RFC, an ALJ does not have to adhere to the entirety of one medical source's opinion." *Christina M.F. v. Berryhill*, No. 5:17-CV-0840 (GTS), 2019 WL 147463, at *6-7 (N.D.N.Y. Jan. 9, 2019) (citing *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *see also Quinn v. Colvin*, 199 F. Supp. 3d 692, 712 (W.D.N.Y. 2016) ("Although [an] ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."); *Wilburn v. Colvin*, No. 15-CV-0058 (TWD), 2016 WL 1237789, at *4

20

(N.D.N.Y. Feb. 29, 2016) (finding that the ALJ was not obligated to incorporate all of a physician's limitations into the RFC where he afforded the opinion "significant but not great weight").

In this case, the ALJ did not err in evaluating the opinion evidence of record. This is particularly true regarding the ALJ's RFC determination as it relates to plaintiff's cervical spine, which finds support in the opinion evidence as well as other substantial evidence of record.  Plaintiff makes much of the ALJ's distinction between Dr. Perla and Dr. Lorensen's opinions regarding plaintiff's neck,[3] arguing that the opinions are, in fact, consistent with each other.  However, the law is not clear as to whether a moderate limitation is synonymous with a finding that an individual can engage in frequent activity.  *See Brittany F. v. Comm'r of Soc. Sec.*, No. 1:18-CV-1365 (ATB), 2020 WL 838076, at *9 (N.D.N.Y. Feb. 19, 2020) (comparing cases).  Thus, this court cannot say that the ALJ erred in interpreting Dr. Lorensen's opinion for moderate neck limitations to be more restrictive than Dr. Perla's opinion that plaintiff could frequently engage in the same activity.

Nor did the ALJ err in giving greater weight to Dr. Perla's less restrictive opinion, as it was consistent with the overall record and supported by substantial evidence.  Despite the limited range of motion evaluated by Dr. Lorensen at his one-time consultative examination, plaintiff's medical records consistently revealed

---

[3]As previously discussed, Dr. Perla opined that plaintiff could "frequently" perform the listed postural activities including looking up and down, turning her head, and holding her head in a static position.  (T. 927).  Dr. Lorensen opined that plaintiff had "moderate" limitations in turning her head.  (T. 532).

unremarkable findings upon cervical examination, with normal-to-minimally-limited range of motion. (T. 354, 360, 401, 503, 558, 584, 628, 733, 758). Plaintiff testified that she was often "hunched over" because it alleviated her back pain, however she could turn her head to the right and left, and look down for prolonged periods of time. (T. 56). It was a "little harder" to look down when she was sitting in a chair. (*Id.*). Plaintiff reported that her hobbies included watching television and sewing, however the sewing was limited by her vision and shoulder pain. (T. 221).

Even accepting plaintiff's argument that the cervical spine limitations opined by Dr. Perla and Dr. Lorensen were synonymous, they still constitute substantial evidence for the plaintiff's modified RFC for light work. As we have explained in prior decisions, moderate exertional and nonexertional limitations are not inconsistent with an RFC for light work. *See White v. Comm'r of Soc. Sec.*, No. 8:17-CV-109 (DJS), 2018 WL 2170288, at *8-9 (N.D.N.Y. May 10, 2018) (the moderate limitations as opined by Dr. Wassef were not inconsistent with an RFC for light work) (collecting cases), *aff'd* 753 F. App'x 80, 82 (2d Cir. 2019) (affirming the district court in rejecting plaintiff's argument that the ALJ could not properly have inferred that White was able to perform light work "on a full-time sustained basis" from Dr. Wassef's opinion that White had "moderate limitations" in standing, sitting, and performing other activities, particularly in light of corroborating evidence including White's daily activities). *See also Rodriguez v. Comm'r of Soc. Sec.*, No. 15-CV-6596, 2016 WL 5660410, at *10 (S.D.N.Y. Sept. 30, 2016) (citing *Laguerre v. Comm'r of Soc. Sec.*, No. 13 Civ. 6747, 2014 WL 7373435, at *10 (S.D.N.Y. Dec. 29, 2014) (substantial evidence supported

RFC to perform full range of light work, where "the ALJ examined the records of her treating and consultative examiners and assessed only moderate [nonexertional] limitations, at most."). Accordingly, and despite plaintiff's argument to the contrary, the ALJ did not err in failing to include plaintiff's cervical spine limitations in his hypothetical to the VE, as these limitations were already contemplated in the modified RFC for light work. Remand is, therefore, not warranted on this basis.

**WHEREFORE,** based on the findings above, it is hereby

**ORDERED**, that the decision of the Commissioner is **AFFIRMED** and this case **DISMISSED**, and it is

**ORDERED**, that the Clerk enter judgment for **DEFENDANT**.

Dated:   April 30, 2020

Andrew T. Baxter
U.S. Magistrate Judge